

**FILED**

Jan 19 2017, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Edward J. Calderaro
Sachs & Hess, P.C.
St. John, Indiana

ATTORNEYS FOR APPELLEE

Brian R. Gates
Mark J. Phillipoff
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

George S. Fischer,

*Appellant-Petitioner,*

v.

Jennifer M. Fischer,

*Appellee-Respondent.*

January 19, 2017

Court of Appeals Case No.
45A05-1512-DR-2328

Appeal from the Lake Superior Court

The Honorable Cheryl Williamson, Senior Judge

The Honorable Elizabeth Tavitas, Judge

The Honorable Thomas Hallett, Magistrate

Trial Court Cause No.
45D03-1410-DR-741

**Robb, Judge.**

# Case Summary and Issue

[1] Jennifer Fischer filed for dissolution of her marriage to George Fischer on October 30, 2014. The trial court held a final hearing on August 27, 2015, and issued an order dissolving the marriage on November 23, 2015. George appeals the dissolution decree, raising two issues for our review, which we consolidate and restate as one: whether the trial court abused its discretion in dividing the value of certain stock options as part of the marital estate. Concluding the value of the stock options at issue are not properly included in the marital estate, we reverse and remand.

# Facts and Procedural History

[2] George and Jennifer were married in 1998. Although they have one child, born in 2003, this appeal only involves a property division issue. Jennifer filed a petition for dissolution of marriage in October 2014, and the trial court held a final hearing in August 2015. George testified that since May of 2011, he has worked for E*Trade, where he earns a base salary plus discretionary bonuses and stock options. In trying to establish George's income for child support purposes based upon George's August 7, 2015 earnings statement from his employer, Jennifer's counsel stated,

> [George is] telling us he will receive no further stock options, no further bonuses for the year, he's not sure about holiday pay. In order to figure out what his total gross is going to be for the year 2015, . . . I took his base pay, uh, of [$11,538.46] per pay period times twenty six pays, comes out to exactly

[$299,999.96]. . . . I've added to that the bonus that he received this year, which is $325,000.00. I've added the holiday pay of [$7,788.47] to that, and I've added the, the stock options that he received of $149,739.62.

Transcript, Vol. II at 35-36. When asked if he had reason to contest that as his projected 2015 income, George conceded he did not, "[p]rovided I work through the end of the year." *Id.* at 36-37.[1]

[3] With regard to the stock options referenced in counsel's remarks above, the evidence establishes George has a stock options account which includes both vested stock options that could be sold by him immediately and unvested stock options "where the sale date has not hit yet." *Id.* at 13. Sometime in 2015, stock options previously granted to him as part of his compensation reached their "sale date" and vested in the amount of $149,739.62.[2] Taxes owed for the vested stock options were paid by the company selling a portion of the now-

---

[1] During the proceedings, Jennifer's counsel refers several times to George's "taxable income" in the form of stock options. *See, e.g., id.* at 106-07 (counsel noting George had approximately $249,000 in "taxable income on stock options" in the last two years); 107 (referring to $100,960.73 of "taxable income from stock options" reflected on George's final pay stub for 2014); 147 (asking Jennifer if she agrees that following "George's testimony . . . about what he's earned, taxable income, so far this year and extrapolat[ing] to the end of the year," his income would be over $780,000 for 2015).

[2] Jennifer's Exhibit 2 appears to show that George was granted stock options in August of 2011, February of 2012, February and July of 2013, and February and August of 2014. A certain number of shares from each of those grants vested prior to the petition for dissolution being filed and approximately 5,500 shares were due to vest after the petition for dissolution was filed but before the final hearing. Additional shares from those grants were due to vest on dates after the final hearing.

vested stock options to cover the tax.[3] Under questioning from Jennifer's counsel, George explained:

> A  The hundred and forty nine thousand on [the August 2015 earnings statement] at the stock option option [sic] line . . . was the amount that was vested for the year 2015.
>
> Q  Okay, from a prior award?  Not from stocks that you received options on through the year 2015 . . . from stocks that you received the options on in one or more prior years.
>
> A  Or it could have been in the same year.  Yes, it, it's previously granted stock, some of which hasn't vested yet and some of which is. . . .  It did this year.
>
> Q  So, these are stocks that had vested, yet they were acquired during the marriage, that you're paying taxes on this year? . . .

---

[3] The trial court posed the following hypothetical to explain the process:

> Q  [L]et's say that this year you're granted a hundred shares. . . . You're granted option in 100 shares of E-Trade that is then scheduled to vest on some date in the future . . . .  Say May 1st[.] So then what happens on May 1st?
> A  Then, in order to pay the taxes the company will sell, let's call it ten shares . . . .  I will now have ninety shares of E-Trade on May 1st.
> * * *
> Q  And then when they sell the ten, what happens to the ten?
> A  The ten is . . . sold for tax purpose – for paying the taxes [and] [p]aid directly to the IRS.
> Q  [S]o then on May 1st, you now have ninety shares of E-Trade for stock for whatever the market price is?
> A  Correct. . . . [A]t which point I can make a decision to keep it or sell it.

*Id.* at 115-17.

A   That I – I've paid taxes on this year?  Correct. . . . But, I
dispute the terminology, but these are ves – at that time of
vesting, I am taxed and that's what you see [on the earnings
statement]. . . . They weren't acquired, they were granted by my
firm.  Typically based on performance.

Q   Okay, if you want to use the term granted, I'm not gonna
dispute that, but they became available through your employer,
whether you want to say grant or acquire, during the marriage,
correct?

A   Yes.

*Id.* at 80-81.

[4]     On cross-examination by his own counsel, George elaborated:

Q   [A]s part of your compensation, you receive a – there's a stock
option to that, correct?

A   Yes.

Q   And how does that work?

A   [I]t's typically granted . . . by my employer at, at the end of
the year bonus cycle.  There is a por – and, and at the time of
grant none of that – none of those stock options are vested. . . .
So they're worth nothing.

Q   So there's an un-vested portion and what happens to that un-
vested portion over time?

A If I remain with the company over time and time elapsed, there's certain dates that come as associated with the vesting of each grant that will trigger a vesting and . . . those become available for sale in the outright market.

Q Okay, and the time vesting, um, are you taxed at that point?

A Yes.

Q Okay, now that line in [the August 2015 earnings statement], where it shows stock options [of $149,739.62], is that what's happening – unvested stocks are now vesting?

A Yes, the un-vested stocks are now vesting.

Q Now, as to the rest of the stocks that remain in the un-vested portion [of your stock options account], if you quit, got fired or died, what would happen with those stocks?

A I'd lose everything.

Q Do you have any option available to you to request from your employer the ability to make those vested prematurely?

A None whatsoever.

*Id.* at 83-84. Once the stock options become vested, George is able to decide to leave them in his stock options account or sell them. He testified that he has kept them all in his stock options account.

[5]     Jennifer testified that she wished the trial court to grant her an interest in the options George had acquired during the marriage regardless of whether they had vested at the time she filed her petition. In other words, "[i]f, hypothetically, there was [sic] two thousand shares that were acquired in the year 2012, that for some reason wouldn't vest till [sic] 2016," Jennifer wanted her share of the 2012 stock options in 2016 when those stocks vest. *Id.* at 143.

[6]     On November 23, 2015, the trial court issued a Decree of Dissolution that approved and incorporated the parties' pre-trial stipulations as to certain issues and settled the remaining issues, including that Jennifer had rebutted the statutory presumption of an equal division of marital assets and should receive sixty percent of the marital estate because of George's superior economic circumstances. With respect to the stock options, the trial court found:

> 20. [George's] unvested stock options are not part of the marital estate and, accordingly, are not divisible by the Court.
>
> 21. [George's] stock options that were vested as of the date of filing are part of the marital estate and are divisible by the Court.
>
> 22. Prior to final hearing, in calendar year 2015, [George's] stock options valued at $149,739.62 became vested. Because these options were acquired during the marriage and vested prior to final hearing, they should be included in the marital estate.

Appellant's Appendix at 12. Accordingly, the trial court ordered, in relevant part:

> Prior to final hearing, in calendar year 2015, stock options valued at $149,739.62 vested and same is reflected on [George's] pay stub for the period ending July 31, 2015. [Jennifer] is awarded sixty percent (60%) of [George's] stock options that vested in 2015 prior to final hearing. The value of said options is $149,739.62. [Jennifer's] 60% interest equals $89,843.77. [George] shall transfer to [Jennifer] E*Trade stock in this amount or he shall pay her the sum of $89,843.77, all within thirty (30) days after the entry of this Decree.

*Id.* at 15. In addition, the trial court found George's weekly gross income to be $10,753.83 and ordered George to pay child support in the amount of $758 per week plus seven percent of his gross income in excess of $10,753.83 per week. "Upon the vesting of future stock options or the receipt of bonuses and any other form of irregular income as shown on his pay stubs," George is to produce proof of the same and pay the additional support due within thirty days. *Id.* at 14. In reaching the weekly gross income figure, it appears the trial court used George's income of $559,199.00 from 2014, which included base pay, holiday pay, bonuses, and vested stock options of approximately $101,000.00.[4] *See* Tr., Vol. II at 86 (George testifying his 2014 income was his "most representative year" of income); *see id.* at 107 (George testifying regarding $100,960.73 in taxable income from stock options in 2014).

---

[4] Yearly income of $559,199.00 equates to a weekly gross income of $10,753.83.

[7] The trial court's treatment of the $149,739.62 in stock options reflected in George's 2015 year-to-date earnings is the only point of contention on appeal.

# Discussion and Decision

## I. Standard of Review

[8] The division of marital assets lies in the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Keown v. Keown*, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008). The trial court's decision is an abuse of discretion when it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing a challenge to the trial court's division of property, we do not reweigh the evidence or assess witness credibility for ourselves, and we consider only the evidence most favorable to the trial court's disposition. *Id.*

[9] The trial court entered findings and conclusions sua sponte. In such case, the findings control only with respect to the issues they cover, and a general judgment standard applies to issues on which there are no findings. *Ahls v. Ahls*, 52 N.E.3d 797, 800 (Ind. Ct. App. 2016). We will affirm a general judgment if it can be sustained on any legal theory supported by the evidence. *Id.* We review the trial court's findings and conclusions using a clearly erroneous standard. *In re Marriage of Sutton,* 16 N.E.3d 481, 485 (Ind. Ct. App. 2014). In conducting our review, we first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Hurt v. Hurt,* 920 N.E.2d 688, 691 (Ind. Ct. App. 2010). A finding is clearly erroneous

when the record contains no facts to support the finding, either directly or by inference, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

## II. Stock Options

[10] George contends the trial court abused its discretion in including the $149,739.62 in the marital pot and dividing it between the parties. He argues the stock options were acquired in his own right following the parties' final separation and should not therefore be considered a marital asset. He also argues the $149,739.62 is not an asset at all, but income. Jennifer contends that because the stock options vested before the final hearing date, they were a marital asset and the trial court acted properly in awarding her a percentage of them. For two reasons, we agree with George that the trial court erred in its treatment of the $149,739.62.

[11] First, we note that in a dissolution action, the trial court must divide the marital property in a just and reasonable manner. Ind. Code § 31-15-7-4(b). The "marital property" includes property owned by either spouse before marriage, property acquired by either spouse in his or her own right after the marriage and before the parties' final separation, and property acquired by their joint efforts. Ind. Code § 31-15-7-4(a). The date of "final separation" is the date the petition for dissolution was filed. Ind. Code § 31-9-2-46. In general, then, any property in which a party has a vested interest on the date the petition for dissolution is filed is subject to division, *Crider v. Crider*, 26 N.E.3d 1045, 1048-49 (Ind. Ct.

App. 2015), and property acquired after the final separation date should not be included in the marital pot, *Ross v. Ross*, 638 N.E.2d 1301, 1303 (Ind. Ct. App. 1994). In other words, the date of final separation seals the property to be included in the marital pot.[5]

[12] In *Hann v. Hann*, 655 N.E.2d 566 (Ind. Ct. App. 1995), *trans. denied*, this court considered as an issue of first impression whether stock options are subject to equitable distribution. Husband was granted certain stock options by his employer before the date of final separation. Some of the stock options became vested and were exercisable prior to the dissolution of the marriage. Others remained unvested.[6] The trial court determined that "only the vested stock options granted to [Husband] . . . that are exercisable upon the date of filing or that become exercisable before the entry of the decree of dissolution . . . are marital property subject to division by the Court . . . ." *Id.* at 567. Analogizing the stock options to pensions in that "[s]imilar to the 'unvested' nature of [Husband's] stock options, a pension is unvested where the right to be paid is subject to forfeiture if the employment relationship terminates[,]" *id.* at 570, we

---

[5] It does not, however, seal the value of the property. When determining the value of marital assets, the trial court may select the value on any date between the filing of the petition and the date of the final hearing. *Webb v. Schleutker*, 891 N.E.2d 1144, 1151 (Ind. Ct. App. 2008).

[6] Specifically, in 1990, Husband was granted 12,500 shares in which he became fully vested prior to the filing of the petition for dissolution and which were exercisable from February 21, 1993 to February 20, 1995. In 1992, Husband was granted 10,000 additional shares, of which 1,250 were fully vested on the date of final separation and exercisable from June 25, 1993 to June 24, 1995. The remaining 8,750 were neither vested nor exercisable at the time of dissolution. And in 1993, Husband was granted 25,000 shares that were neither vested nor exercisable at the time of dissolution. The trial court included only the 12,500 shares from the 1990 option and the 1,250 shares from the 1992 option in the marital estate. *See generally id.* at 568-69.

affirmed, noting the stock options at issue are "not a presently vested property interest subject to distribution as a divisible marital asset[,]" *id.* at 571.

> [Husband] was granted the stock options as a benefit of his employment . . ., and any future value to be realized by the exercise of these options (when and if they become exercisable) is wholly contingent upon [Husband's] continued employment . . . . If [Husband] terminates his employment . . . prior to the date the stock options become exercisable, he has no right under the Stock Option Plan to exercise that option. As such, the stock options not exercisable as of the date of separation, and which will become exercisable at a particular date in the future conditioned upon [Husband's] continued employment, are not subject to division as marital property.

> We find that the treatment most consistent with the statutory scheme currently in place in Indiana is to classify only those stock options granted to an employee by his or her employer which are exercisable upon the date of dissolution or separation which cannot be forfeited upon termination of employment as marital property.

*Id.* Both sides assert *Hann* supports their position. We acknowledge that the majority's passing statement that "only those stock options granted to an employee by his or her employer which are exercisable upon the date of *dissolution or separation*" are marital property causes some confusion. *Id.* at 571; *see also id.* at 567 (trial court ruling that stock options that become exercisable before the entry of the decree are marital property). However, the majority *also* states that "stock options not exercisable *as of the date of separation*" are not marital property. *Id.* at 571 (emphasis added). And we note that all of Husband's stock options which the trial court included in the marital estate

were in fact exercisable as of the date of final separation. *Id.* at 568-69 (outlining the specifics of the shares at issue and showing that all of the shares included by the trial court were vested and exercisable prior to January 31, 1994, when the petition for dissolution was filed). Given the facts of *Hann*, the majority's conflicting statements, and the great weight of authority in Indiana that the marital estate closes on the date the petition for dissolution is filed, we do not believe *Hann* clearly stands for the proposition that stock options becoming exercisable after the date of final separation but before dissolution are to be included in the marital estate.[7] Rather, we continue to apply the longstanding rule that only property that is vested in the parties on the date the petition for dissolution is filed is part of the marital pot. *See, e.g.*, *Loeb v. Loeb*, 261 Ind. 193, 199, 301 N.E.2d 349, 353 (1973) (holding husband's remainder interest in a trust should not be included in the parties' property settlement

---

[7] In *Henry v. Henry*, 758 N.E.2d 991 (Ind. Ct. App. 2001), the only Indiana case to cite *Hann* substantively with respect to stock options, vested but unexercised stock options Husband periodically received from his employer were forfeitable only if he voluntarily left his employment or was terminated for cause (although they were subject to unilateral termination by the employer). Husband was granted stock options in March 1993, March 1994, and February 1995. It does not appear from the facts of the case that the options, when granted, were unvested until some future date, rather they were exercisable immediately. Wife filed a petition for dissolution in 1998, and by agreement, Husband exercised a number of the stock options thereafter. The remaining options were unexercised as of the time of the final hearing. The trial court found that the unexercised options were not to be included in the marital estate because they were subject to future forfeiture. *Id.* at 992. We reversed, noting the options were vested and exercisable "prior to the final hearing" and subject to forfeiture only in limited circumstances; therefore, the only contingency to obtain the value of the options for the benefit of the marital estate was the actual exercise of them and they should have been included in the marital estate. *Id.* at 994. Despite the *Henry* court's reference to the "final hearing" as the time marker, we note that *Henry* is unlike this case in every respect, in that the options at issue were both granted *and* exercisable as of the date of final separation and we do not believe it is instructive in the situation before us nor does it compel the conclusion Jennifer seeks: that options that are unvested on the date of final separation but become exercisable before the final hearing must be included in the marital estate.

because he had no present interest of possessory value as he would take nothing if he predeceased the settlor).

[13] The evidence regarding George's stock options was somewhat sparse and not very detailed, but it seems clear that the year-to-date stock options of $149,739.62—showing on George's August 2015 earnings statement and representing stock options granted to George by his employer during the parties' marriage—did not vest until sometime between January 1, 2015 and July 31, 2015. No matter which date in that range the stock options vested, it was after the parties' final separation date in October 2014, unlike the facts in *Hann*. Although George was granted those stock options during the marriage, his future enjoyment of them was contingent upon his continued health and employment. He did not become able to exercise the options until after the petition for dissolution was filed. In other words, on the parties' final separation date, the stock options were neither vested in possession—because George did not have an immediately existing right of present enjoyment—nor vested in interest—because George did not have a presently fixed right to future enjoyment. *See In re Marriage of Preston*, 704 N.E.2d 1093, 1097 (Ind. Ct. App. 1999) (explaining the meaning of the word "vest" in relation to pension benefits); *cf. Waggoner v. Waggoner*, 531 N.E.2d 1188, 1189 (Ind. Ct. App. 1988) (noting a trial court can divide property, such as pension benefits, that would not be forfeited upon termination of employment or that are vested as of the final separation date but that are payable later). Accordingly, the trial court clearly erred in finding the $149,739.62 in stock options which vested after the

date of final separation should be included in the marital pot and abused its discretion in dividing that amount between the parties.

[14] Second, we note the trial court's inconsistent treatment of the stock options that vested in 2014 and stock options that would vest in the future from the stock options that vested in 2015. The $101,000 in stock options that vested in 2014 were included in George's income for purposes of determining his child support obligation. Stock options that vest in the future are to be treated as irregular income bearing on his future child support obligation. Yet, despite the parties repeatedly referring to the $149,739.62 as taxable income throughout the final hearing, the trial court treated the stock options that vested in 2015 as an asset rather than as income. The value of George's stock options cannot be both property and income depending on the year and circumstances. As the $149,739.62 is not an asset subject to division as marital property, it is properly considered income subject to the trial court's child support order regarding income over the weekly threshold.

[15] Finally, we note the trial court ordered George to pay sixty percent of the $149,739.62 to Jennifer in property settlement. As we have concluded this was in error, we remand to the trial court to amend the decree of dissolution and conduct any proceedings necessary to comply with this decision.

# Conclusion

[16] Because the stock options at issue vested after the date of the parties' final separation, they should not have been included in the marital estate as an asset subject to division. Accordingly, we reverse the trial court's order in this respect and remand for further proceedings consistent with this opinion.

[17] Reversed and remanded.

Mathias, J., and Brown, J., concur.