## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2017, 6:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Donn H. Wray
Bamberger, Foreman, Oswald & Hahn, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jon L. Orlosky
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John E. Moriarity and Mae E. Moriarity, | June 13, 2017 |
| *Appellants-Plaintiffs/Counterdefendants,* | Court of Appeals Case No. 18A04-1611-PL-2463 |
| v. | Appeal from the Delaware Circuit Court |
| Richard Gillis, | The Honorable Thomas A. Cannon, Jr., Judge |
| *Appellee-Defendant/Counterclaimant* | Trial Court Cause No. 18C05-1408-PL-20 |

**Crone, Judge.**

## Case Summary

[1] John E. Moriarity and Mae E. Moriarity own property adjacent to property owned by Richard Gillis. The Moriaritys filed a claim against Gillis alleging that he had trespassed and cut down trees on their property. Gillis filed a counterclaim alleging that he had acquired that property by adverse possession. The trial court found in Gillis's favor. On appeal, the Moriaritys contend that the trial court erred. Finding no error, we affirm.

## Facts and Procedural History

[2] In 1987, Gillis and his then-wife Patronella bought three tracts of land (known as Tracts 1, 6, and 7) at an auction conducted by Schrader Real Estate Auctions. Gillis viewed the tracts before the auction and was told by Schrader representatives that the western boundary of Tract 7 was marked by a fence row. In 1989, as part of a divorce settlement, Patronella quitclaimed the contiguous Tracts 6 and 7 to Gillis, who quitclaimed the noncontiguous Tract 1 to her. Tracts 6 and 7 were combined into one tract, and the deed for the property contains a legal description indicating that it is located in the northwest quarter of section 20 in Niles Township, Delaware County, and comprises approximately fifty-seven acres. Plaintiffs' Ex. I. Starting in 1987, Gillis farmed Tracts 6 and 7 and made improvements to the drainage and soil.

[3] In 2008, the Moriaritys purchased land directly west of Tract 7 through Schrader Real Estate. The deed indicates that the property is located in the northeast quarter of section 19 in Niles Township and comprises approximately

eighty acres. Plaintiffs' Ex. 2. Schrader representatives told the Moriaritys that the eastern boundary of their property was marked by the same fence row that marked the purported western boundary of Tract 7. For the next five years, both the Moriaritys and Gillis believed that the fence row established the boundary between their properties. In 2013, the Moriaritys discovered that the legal description of their property included 8.66 acres east of the fence row.

[4] In 2014, the Moriaritys filed a notice of claim against Gillis in small claims court, and the case was transferred to the plenary docket. The Moriaritys alleged that Gillis had farmed over eight acres of their land for profit and had cut down trees on their property, and they sought damages for trespass, theft, and conversion. Gillis filed a counterclaim alleging that he had acquired the disputed property via adverse possession. After a bench trial, the court entered judgment against the Moriaritys and in favor of Gillis. The Moriaritys now appeal.

## Discussion and Decision

[5] For many years, to establish title by adverse possession in Indiana, the claimant had to prove that the possession was actual, visible, open and notorious, exclusive, under claim of right, hostile, and continuous for the statutory period. *See Fraley v. Minger*, 829 N.E.2d 476, 485 (Ind. 2005) (collecting cases). In *Fraley*, our supreme court "[s]ynthesiz[ed] and rephrase[d]" these concepts and held that "the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof" of the following:

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id*. at 486. "The requisite period of time for adverse possession is ten years." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015) (citing *id*. at 487 and Ind. Code § 34-11-2-11).

[6] In addition to the foregoing elements of adverse possession, our legislature has imposed "the statutory requirement that 'the adverse possessor pay[] all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property.'" *Id*. (quoting Ind. Code § 32-21-7-1). The good-faith provision was added to the statute in 2006 in

response to our supreme court's use of similar language in *Fraley*. "Substantial compliance satisfies this statutory tax payment requirement 'where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.'" *Id.* (quoting *Fraley*, 829 N.E.2d at 493).

[7] In its order, the trial court made the following findings and conclusions regarding Gillis's adverse possession counterclaim:

> 12. From late 1987 to 2013, a period of twenty-six (26) years, Richard Gillis farmed and retained exclusive control over Tracts 6 and 7. He made improvements to the drainage and the soil on Tracts 6 and 7 and was open, obvious and notorious in his possession and farming of the land. Richard Gillis testified that he believed that he was paying the taxes on all the land he was told he was purchasing. For twenty-six (26) years, no one challenged Richard Gillis's ownership or control of the property. It was clearly his intent to claim full ownership of the property and he did so.

> 13. In 2008, [the Moriaritys] purchased through Schrader Real Estate approximately eighty (80) acres of land directly east [sic[1]] of Tract 7. Again, representatives of Schrader told the [Moriaritys] that the western [sic] end of their property was marked by the same fence that marked Richard Gillis's eastern [sic] boundary. For the next five (5) years, both the [Moriaritys]

---

[1] Several exhibits appear to show that the Moriaritys' property is directly *west* of Tract 7. *E.g.*, Plaintiff's Exs. 8, A, B, and G. We further note that Gillis's appellee's appendix contains copies of exhibits, which is prohibited by the appellate rules. *See* Ind. Appellate Rules 50(F) (stating that "parties should not reproduce any portion of the Transcript in the Appendix.") and 2(K) (defining "Transcript" as "the transcript or transcripts of all or part of the proceedings in the trial court … that any party has designated for inclusion in the Record on Appeal *and any exhibits associated therewith*.") (emphasis added).

and Gillis believed that the fence line established their boundary lines. During this time, each continued to pay taxes on the properties they believed were divided by the fence row.

14. At some point in 2013, the [Moriaritys] discovered that the legal description to their eighty (80) acres included 8.66 acres that was west [sic] of the fence line. Combined, the parties' roughly 137 acres of land had a six percent (6%) dispute.

15. That no evidence was presented to rebut Richard Gillis's testimony.

16. That the Court finds that Richard Gillis has established by clear and convincing evidence all of the elements to establish title through adverse possession of the 8.66 acres in dispute in this case.

17. The Court further finds that based on the unique circumstances and the facts of this case that Richard Gillis, in good faith, had a reasonable belief that he was paying the taxes on the disputed acreage herein.

18. That in fact, Richard Gillis established that his fee simple title to the disputed parcel was established by adverse possession prior to the [Moriaritys'] purchase of the adjacent property.

19. That [Moriaritys] have failed to prove their claim for damages herein based on either their claim for trespass [or] their claim for damages to trees.[2]

20. That Richard Gillis is entitled to have the title of the 8.66 acres (the disputed acreage) quieted in his name.

Appealed Order at 4-5.

[8] The Moriaritys contend that the trial court erred in entering judgment in favor of Gillis. Where, as here, a trial court enters its findings and conclusions sua sponte, "the findings control only with respect to the issues they cover, and a general judgment standard applies to issues on which there are no findings." *Fischer v. Fischer*, 68 N.E.3d 603, 608 (Ind. Ct. App. 2017), *trans. denied*.

> We will affirm a general judgment if it can be sustained on any legal theory supported by the evidence. We review the trial court's findings and conclusions using a clearly erroneous standard. In conducting our review, we first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. A finding is clearly erroneous when the record contains no facts to support the finding, either directly or by inference, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.

*Id*. (citations omitted). "In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable

---

[2] The Moriaritys do not appeal the trial court's judgment against their claim for damages to trees, but state that if we "reverse the finding of adverse possession in favor of Gillis, further proceedings upon remand will include [their] claim for [trespass] damages." Appellants' Br. at 9. Because we affirm that finding, remand is unnecessary.

inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses." *Bonewitz v. Parker*, 912 N.E.2d 378, 381 (Ind. Ct. App. 2009), *trans. denied*.

[9] The Moriaritys raise three principal arguments on appeal: (1) the trial court clearly erred in concluding that Gillis reasonably believed in good faith that he paid taxes on the disputed property; (2) the trial court clearly erred in concluding that Gillis carried his burden with respect to the elements of intent and notice; and (3) Gillis's adverse possession counterclaim is precluded by the doctrine of merger by deed.

## Section 1 – The trial court did not clearly err in concluding that Gillis reasonably believed in good faith that he paid taxes on the disputed property.

[10] The Moriaritys argue that the trial court clearly erred in concluding that Gillis had a reasonable good-faith belief that he paid taxes on the disputed property, for two reasons: (1) Gillis could not reasonably have believed that he was paying taxes on an additional 8.66 acres; and (2) the disputed property lies outside the description on Gillis's tax duplicates, which bear the notation "PT NW QTR." Plaintiffs' Ex. S. The Moriaritys rely primarily on *Dewart v. Haab*, 849 N.E.2d 693 (Ind. Ct. App. 2006), in which the trial court awarded a 5.64-acre tract belonging to the Dewarts to Haab and Hapner, who owned an adjacent twenty-three-acre tract, as adverse possessors. On appeal, another panel of this Court stated,

Unlike *Echterling* [*v. Kalvaitis*, 235 Ind. 141, 126 N.E.2d 573 (1955)] and *Fraley*, this is not a narrow boundary strip within the margin of ambiguity in the tax records, but rather a several acre tract of land on which only the Dewarts officially paid taxes. As illustrated by the *Echterling* Court's example, this instant case is a far cry from a building foundation encroaching on approximately a foot of a contiguous plot of land.[3] Furthermore, here, we are not confronted with a case of mistake due to imprecision in a tax duplicate or other assessment document. Kosciusko County's records for the Tract clearly denote the set 5.64 acres, as bounded by Haab's, Hapner's, and the [Dewarts'] real property, with the Dewarts' name and address as the owners for the purpose of tax payment.

*Id*. at 697. The panel ultimately concluded that "a reasonable trier of fact could not correctly conclude, let alone by clear and convincing evidence, that Haab and Hapner complied with the adverse possession tax statute," and therefore it reversed the trial court's judgment. *Id*.

[11] To the extent *Dewart* suggests that it would never be reasonable for an adverse claimant to believe in good faith that he has paid taxes on anything more than a narrow strip of land, we respectfully believe that it sweeps too broadly. Plaintiffs' Exhibit 8, a graphic representation of property deeds in the quarter

---

[3] *See Echterling*, 235 Ind. at 147, 126 N.E.2d at 575-76 ("It would seem to us that … where continuous, open, and notorious adverse possession of real estate has been established for [the statutory period] to a contiguous and adjoining strip of land such as that here in question [i.e., ten feet wide], and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be one foot over on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes."). In *Fraley*, the disputed tract comprised approximately 2.5 acres, and the adverse claimants knew that the tract was not described in their deed. 829 N.E.2d at 480.

sections at issue, appears to show that the disputed property in this case is over 200 feet wide (east-west) by 1266.50 feet long (north-south).[4] Gillis observes that

> there is absolutely no landmark or physical distinction in the land to indicate where one quarter section ends and one begins.[5] It is one continuous parcel divided only by a farm fence that has defined the boundaries from before 1987. Since both parties were told, albeit 21 years apart, that the farm fence defined the boundaries for both parties, it is perfectly understandable that both parties believed that they were paying taxes on their parcels as defined by the farm fence.

Appellee's Br. at 14. We agree and therefore hold that, under these circumstances, the trial court did not clearly err in concluding that Gillis reasonably believed in good faith that he paid taxes on the disputed property.

## Section 2 – The trial court did not clearly err in concluding that Gillis carried his burden with respect to the elements of intent and notice.

[12] Next, the Moriaritys point to documents that Gillis drafted regarding the benefits that he had conferred on them by farming and improving the disputed property, and they argue that the documents are inconsistent with an intent to claim full ownership of the property and to give actual or constructive notice of

---

[4] The document's small typeface makes the numerals difficult to read.

[5] Plaintiffs' Exhibit B, an aerial photograph of the Moriaritys' property and the disputed tract, supports this statement. The eastern portion of the Moriaritys' property appears to be heavily wooded, and the disputed tract (which lies west of the quarter section boundary) and the western portion of Gillis's property appear to be a block of cultivated farmland.

that intent.[6]  This evidence conflicts with Gillis's testimony that he believed that he owned the disputed property and openly farmed it as his own for twenty-six years.  It was the trial court's prerogative to interpret, weigh, and credit the evidence and resolve that conflict.  We may not second-guess that determination on appeal.

[13]  On the issue of notice, the Moriaritys further observe that Gillis admitted to farming only "6.4 acres of a total claimed 8.66 acres[,]" and they assert that this is a failure of proof "at least as to the 2.26 acres upon which [Gillis] did *nothing*."  Appellants' Br. at 28, 29.  The 6.4-acre figure was based on Gillis's own calculation, and he admitted that he was not "a licensed surveyor …."  Tr. at 18.  Moreover, his counsel pointed to testimony regarding trees on the fence row and elsewhere on the disputed property, and he argued that "[y]ou can't farm every inch of the ground that you believe you have in a situation like this." *Id*. at 98.  We must decline the Moriaritys' invitation to reweigh the evidence in their favor here as well.  Therefore, we hold that the trial court did not clearly err in concluding that Gillis carried his burden with respect to the elements of intent and notice.

## Section 3 – The doctrine of merger by deed is inapplicable.

[14]  Finally, the Moriaritys argue that because Gillis's deed is unambiguous regarding the boundaries of his property, he could not rely on the Schrader

---

[6] The Moriaritys also refer to Gillis's deposition, which was not included in the exhibits volume filed on appeal.  *See* Ex. Index at 6.  Its availability is immaterial to our analysis.

representatives' description of its western boundary, and therefore his adverse possession claim is precluded by the doctrine of merger by deed. *See* Appellants' Br. at 30 ("'In the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof.'") (quoting *Warner v. Estate of Allen*, 776 N.E.2d 422, 427 (Ind. Ct. App. 2002), *trans. denied* (2003)) (alteration and emphasis in brief omitted). The Moriaritys cite no cases in which the doctrine has been applied to a deed holder and a third party in an adverse possession case, and we are aware of none. Therefore, we are inclined to find the doctrine of merger by deed inapplicable and affirm the trial court.

[15] Affirmed.

Baker, J., and Barnes, J., concur.