**In re the Marriage of: William E. HURT, Appellant–Petitioner,**

v.

**Caroline G. HURT, Appellee–Respondent.**

**No. 12A02–0904–CV–350.**

Court of Appeals of Indiana.

Jan. 26, 2010.

Kurt R. Homann, Collier Homann Siamas & Perkins, LLC, Crawfordsville, IN, Attorney for Appellant.

Bradley K. Mohler, Ponton & Mohler, Frankfort, IN, Attorneys for Appellees.

**OPINION**

BROWN, Judge.

William Hurt ("Husband") appeals the trial court's order for him to pay Caroline Hurt ("Wife") the amount of $10,189.14 stemming from their 2004 dissolution decree. Husband raises one issue, which we revise and restate as whether the trial court's conclusion that pension payouts made to accounts held solely in Wife's name were for joint living expenses and were not meant to satisfy provisions of the dissolution decree is clearly erroneous. We affirm.

The relevant facts follow. On June 18, 2004, the marriage between Husband and Wife was dissolved by decree. In the dissolution decree, the trial court ordered that Husband "shall pay to [Wife] the sum of $9,000.00 in which [Husband] shall have six (6) months from the filing of this Decree of Dissolution to have said $9,000.00 paid." Appellant's Appendix at 9. Husband did not pay Wife as ordered. In 2005, Husband filed for Chapter 13 bankruptcy, and on October 6, 2005, Wife filed a claim in the bankruptcy proceeding for $9,000 as a creditor. Wife received $1,690.86 as a result of this claim.[1]

In July or August of 2006, Husband and Wife "got back together" and resumed sharing a residence and paying bills jointly. Transcript at 8. In late August 2006, Husband relocated from Frankfort to Veedersburg, Indiana to take a new job. Wife followed Husband to Veedersburg in January 2007, and they lived together in Veedersburg until December 2007 when they again separated.

---

1. We note that the decision by the bankruptcy judge and subsequent payment of $1,690.86 by Husband to Wife did not discharge Husband's debt. Pursuant to federal bankruptcy law, "[a bankruptcy] discharge ... does not discharge an individual debtor from any debt ... (15) to a spouse, former spouse, or child of the debtor ... incurred by the debtor ... in connection with a separation agreement, divorce decree or other order of a court...." 11 U.S.C. § 523(a)(15).

On November 1, 2006, Husband began drawing monthly payments from a pension he held through his former employment with the City of Frankfort. On February 1, 2007, Husband directed that a portion of his monthly pension payment be deposited into three different accounts titled solely in Wife's name. The amounts directed were for $520.00, $30.00, and $132.06 per month, for a total monthly disbursement to Wife's accounts of $682.06, which constituted the entirety of the net monthly disbursements. Wife's accounts received a total of $7,502.66 from Husband's pension between February and December of 2007. Wife used much of the funds paid to her on joint expenses, including paying for auto insurance on Husband's truck and for a life insurance policy insuring Husband's life. Wife also spent the funds on food, hardware, utilities, and trips to the drug store which benefitted both Husband and Wife.

In January 2008, soon after Husband and Wife again separated, Husband directed that all monthly payments from his pension be deposited in an account titled solely in Husband's name and stopped all payments to Wife's accounts.

On April 3, 2008, Wife filed a Motion for Rule to Show Cause and/or Proceedings Supplemental asking Husband "to appear and show cause as to why he should not be held in contempt of Court for violating the Court's Order regarding payment" of the $9,000 owed to her from the 2004 dissolution. Appellant's Appendix at 12. At the hearing held on January 20, 2009, the following colloquy occurred between Wife and her counsel on direct examination discussing the monthly pension deposits:

Q So, why did he tell you it was going to be in your account, if he did?

A Yes. So it wouldn't show up in his account.

Q Okay. Well, did he have—did he express a concern to you about additional money showing up in his account while he was doing the bankruptcy?

A I beg your pardon.

Q Was he—did he tell you he didn't want additional income or money to show up in his account while he was doing the bankruptcy?

A Yes.

Q And so the money was then taken from his Frankfort account retirement and put in your account.

A Yes.

Q Did [Husband] ever tell you that that amount was your payment on this nine thousand dollars he owed?

A No.

Q And—and was it ever your understanding that those monies coming from the Frankfort pension were being applied to the money he owed you?

A No.

Transcript at 13–14.

Husband testified to the following on direct examination:

Q ... [Y]ou recall the divorce decree that you owed her—that—that through the decree you were to pay her nine thousand dollars?

A That's correct.

Q Did you pay her that money?

A Through my retirement, yes.

Q So you did pay it?

A Yes.

Q And uhm, was that what you had set up with [Wife] in how you were going to pay it?

A I thought so—in my mind, yes.

*       *       *       *       *       *

Q Okay. And was it an agreement between yourself and [Wife], to put

that money in her account and that was how you were gonna pay for the nine thousand dollars?

A   I guess, that that was my understanding, yes.

Q   And did you discuss that with her?

A   I thought we did, yes.

*Id.* at 53, 65. Additionally, on cross examination, when asked if he had an agreement that the deposits into Wife's accounts were to pay for the $9,000 he owed Wife, Husband answered that "Yes, I did have an agreement with her if you want to put it that way. Yes, I did." *Id.* at 69.

On March 23, 2009, the trial court issued an order on the matter and determined that Husband "directed the funds from his pension be placed in [Wife's] account to be used for their joint living expenses." Appellant's Appendix at 7. The trial court concluded "that [Husband] promptly directed the City of Frankfort to terminate the deposits at the time [Husband] and [Wife] separated in January 2008, without reference to whether the $9000 judgment had been paid, indicating that such payments were not made to satisfy the judgment owed." *Id.* The trial court concluded that Husband had failed to pay Wife the $9,000, and it ordered Husband to pay to Wife $10,189.14.[2]

■■■   The sole issue is whether the trial court's conclusion that pension disbursements made to accounts held solely in Wife's name were for joint living expenses and were not meant to satisfy provisions of the dissolution decree is clearly erroneous. Here, the trial court entered findings of fact and conclusions thereon sua sponte. Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings support the trial court's conclusions of law and judgment. *Id.*

In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Coffman v. Olson & Co.*, 906 N.E.2d 201, 206–207 (Ind.Ct. App.2009), *reh'g denied, trans. denied.* In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* at 207. Findings will be set aside only if they are clearly erroneous. *Yanoff*, 688 N.E.2d at 1262. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

■■■   Husband argues that "[t]he evidence is undisputed that [Husband] paid more than $9,000.00 to [Wife] after the parties were divorced," and "[t]he Trial Court abused its equitable discretion in ignoring these payments and finding that [Husband] must pay the $9,000.00 obli-

---

2.   The trial court arrived at the $10,189.14 amount by applying an 8% interest rate to the $9,000 over four years and subtracting the $1,690.86 which Husband had already paid to Wife from the 2005 bankruptcy proceeding.

gation...." Appellant's Brief at 5. Husband argues that:

> It is respectfully submitted that the *use* of the funds transferred to [Wife] is not relevant; she could have saved the funds, applied them to individual expenses or used them however she chose. The important fact was that she had exclusive control over, and possession of the funds once they were transferred from [Husband's] pension check to her accounts.

*Id.* at 13. Husband also argues that, all told, "in direct payments to [Wife], from [Husband], [Wife] received $9,193.52." *Id.* at 12.

Wife argues that "[t]he amounts deposited into [Wife's] account(s) from [Husband's] pension in 2007 were not payments toward the $9,000.00, but rather were payments to allow her to pay their living expenses." Appellee's Brief at 4. Wife argues that "[i]mmediately upon their separation in December 2007, [Husband] stopped all payments from his pension to [Wife's] account(s), with no reference to whether the $9,000.00 had been paid." *Id.*

At issue is a paragraph in the trial court's order listed under the Conclusions of Law heading, but which is more properly characterized as a finding of fact. *See In re A.H.*, 913 N.E.2d 303, 306 n. 3 (Ind. Ct.App.2009). Specifically, Husband challenges paragraph 2 of the Conclusions of Law, which states:

> 2. That the Court does not find that [Husband] directed the funds from his pension be placed in [Wife's] account to pay the judgment; rather, the Court finds that [Husband] directed the funds from his pension be placed in [Wife's] account to be used for their joint living expenses.

Appellant's Appendix at 7. Our task is to determine whether the evidence supports this finding, or whether it is clearly erroneous.

Here, the record reveals that during 2007 when the funds were being directed into Wife's accounts, Husband and Wife had reunited, and they were paying bills jointly. During this time period, Husband was not receiving any additional disbursements from his pension. Wife used much of the funds paid to her on joint expenses, including paying for auto insurance on Husband's truck and for a life insurance policy insuring Husband's life. Wife also spent the funds on food, hardware, utilities, and trips to the drug store which benefitted both Husband and Wife. Also, Wife testified at the hearing that the reason for the pension funds being directed into accounts solely in her name was so the funds would not "show up in [Husband's] account while he was doing the bankruptcy." Transcript at 13. Also, in January 2008, soon after Husband and Wife again separated, Husband redirected the monthly payments from his pension to pay to an account in Husband's name, and to stop all payments to Wife's accounts. As Husband attested to at the hearing, however, he never filed, nor requested that Wife file, a satisfaction of the judgment.

Considering only the facts favorable to the judgment, we cannot say that the trial court's determination that the pension funds directed into accounts titled in Wife's name and controlled by Wife were for joint living expenses and not in satisfaction of the $9,000.00 debt from the 2004 dissolution decree was clearly erroneous.

For the foregoing reasons, we affirm the trial court's determination that the payments directed to Wife's accounts from Husband's pension were for joint living expenses and not made in satisfaction of the $9,000 debt owed to Wife pursuant to their 2004 dissolution decree, and that

Husband is ordered to pay Wife the sum of $10,189.14 plus post-judgment interest.

Affirmed.

MATHIAS, J., and BARNES, J., concur.