## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2016, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEY FOR APPELLEE

Thomas A. Massey
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy B. Hopper, <br> *Appellant-Defendant,* <br><br> v. <br><br> Angela C. Hopper, <br> *Appellee-Plaintiff.* | August 24, 2016 <br><br> Court of Appeals Case No. 65A01-1510-DR-1603 <br><br> Appeal from the Posey Circuit Court <br><br> The Honorable James M. Redwine, Judge <br><br> The Honorable S. Brent Almon, Special Judge <br><br> Trial Court Cause No. 65C01-1405-DR-192 |

**Altice, Judge.**

### Case Summary

[1]     Timothy Hopper and Angela Hopper were married in 1999 and had one child.

In 2014, Angela filed a petition for dissolution of marriage. The trial court

dissolved the parties' marriage, determined custody of the minor child, set child support, valued the parties' assets, and divided the marital estate. On appeal, Timothy challenges the trial court's valuation of his business for purposes of dividing the marital estate. Timothy presents two issues for our review:

> 1. Did the trial court abuse its discretion in valuing the business at $200,000?

> 2. Did the trial court rely on impermissible hearsay evidence in valuing the business?

Angela cross-appeals, asserting that the trial court abused its discretion in awarding her only $3000 toward her attorney fees.

We affirm.

### Facts & Procedural History

The parties were married on January 15, 1999. In September 2009, Timothy and a business partner purchased Carter Plumbing and Heating, LLC, (Carter Plumbing) for $167,500. The business purchase included all intangibles such as, but not limited to, the exclusive rights to use the name Carter Plumbing and the goodwill associated with the business through execution of a covenant not to compete by the seller. In 2012, Timothy bought out his business partner's fifty-percent interest in Carter Plumbing for $10,000. As part of the purchase agreement, Timothy's business partner signed a non-compete agreement.

[4]     Angela filed a verified petition for dissolution of marriage on April 14, 2014. During the pendency of the divorce proceedings, Timothy hired an appraiser, George Pritchett, to value all tangible and intangible assets of Carter Plumbing. As directed by Timothy, Pritchett used April 14, 2014 as the date upon which to base his appraisal. As of that date, Carter Plumbing's balance sheet reflected an ownership equity[1] of negative $43,460.

[5]     In addition to considering the ownership equity, Pritchett collected various information and industry data, which informed him that approximately seventy percent of the selling price of similar businesses represented the value of intangibles and non-compete agreements. Pritchett also took into account that Timothy stated he would not sign a covenant not to compete. He therefore did not include personal goodwill in his calculation. Based on the information he compiled, Pritchett prepared an appraisal report in which he concluded that, if sold, Carter Plumbing had a nominal value of $1,000. Pritchett opined that even though Carter Plumbing had a negative ownership equity, a potential buyer might pay $1,000 for use of the name Carter Plumbing.

[6]     In contrast to the valuation provided by Pritchett, Angela presented evidence that Timothy provided his bank with a verified personal financial statement, dated August 25, 2014, in which he asserted that Carter Plumbing was an asset valued at $200,000. Timothy attached a balance sheet dated that same day that

---

[1] Pritchett explained that ownership equity is the value of the assets minus the value of the liabilities. Ownership equity does not include a value for intangibles.

showed Carter Plumbing had an ownership equity of $197,315.72.[2] Angela also presented evidence that in 2013 Timothy retained Strategic Tax Advisors (STA) to provide tax strategies and business recommendations for Carter Plumbing and paid them $15,000 for the services provided. STA prepared a report wherein it was noted that Timothy informed STA that Carter Plumbing had a value of $400,000.

[7] Finally, Angela presented the expert testimony of Jerry Peters, a Certified Public Accountant, who noted that Carter Plumbing had a substantial increase in ownership equity from April 14, 2014, the date used by Pritchett in his appraisal, and August 25, 2014. Specifically, Peters noted that Carter Plumbing's ownership equity increased from negative $43,460 to positive $197,315. In subsequent months, the balance sheet continued to reflect that the ownership equity for Carter Plumbing remained steady around $200,000. Peters acknowledged that his analysis of Carter Plumbing's balance sheets was not a valuation of the worth of the business as it did not include a value for intangible assets (including goodwill).

[8] In contrast to Peters's testimony, Timothy presented the August 25, 2014 balance sheet to Pritchett. Pritchett testified that some of the entries on the

---

[2] During discovery, Angela requested numerous times that Timothy provide her with financial information pertaining to Carter Plumbing and Timothy did not comply with those discovery requests. Angela obtained Timothy's personal financial statement and accompanying balance sheet through her own efforts. With the court's intervention during a hearing, Timothy provided to Angela additional financial information in the form of monthly balance sheets for Carter Plumbing from September 2014 through March 2015.

balance sheet were "probably" accounting-related entries that had not been "marked to market." *Transcript Day 1* at 57. Pritchett further testified that if he had used the August 25, 2014 balance sheet for his valuation, he would have valued Carter Plumbing at between $40,000 and $50,000.

[9] The final hearing was held on May 8, 2015, and July 29 through July 30, 2015. The trial court issued its final decree of dissolution of marriage on September 16, 2015, and a corrected decree on September 17, 2015. In the corrected decree, the trial court dissolved the parties' marriage, determined custody of the parties' only child, set child support, valued the parties' assets, and divided the marital estate.

[10] With respect to the property division, the trial court valued Carter Plumbing at $200,000 and awarded the business in its entirety to Timothy, bringing the value of his share of the marital estate to $237,580.83. The total value of Angela's share was $49,684.98. Finding that the marital estate should be divided equally, the trial court ordered Timothy to make an equalization payment of $93,911.93 to Angela.[3] The trial court also ordered Timothy to pay $3000 of Angela's attorney fees at a rate of $250 per month. Timothy now

---

[3] The trial court allowed Timothy to pay this amount at a rate of $5000 per quarter with statutory interest accruing at 8% per annum, with the first payment to commence on January 15, 2016. The trial court also awarded Angela a lien against Carter Plumbing and certain rental property until Timothy paid the equalization payment in full.

appeals and Angela cross-appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[11] Where, as here, the trial court enters findings and conclusions *sua sponte*, the findings control only with respect to the issues they cover, while a general judgment standard applies to issues on which there are no findings. *In re Marriage of Sutton*, 16 N.E.3d 481, 484-85 (Ind. Ct. App. 2014). We affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Hurt v. Hurt*, 920 N.E.2d 688, 691 (Ind. Ct. App. 2010). When the court has made findings of fact and conclusions thereon, we review those findings and conclusions using a clearly erroneous standard. *Sutton*, 16 N.E.3d at 485. A finding of fact is clearly erroneous when the record contains no facts to support the findings, either directly or by inference. *Hurt*, 920 N.E.2d at 691. "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id*. In conducting our review, we first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Id*.

## 1. Business Valuation

[12] Timothy argues that the trial court abused its discretion by assigning a value of $200,000 to Carter Plumbing. The trial court's valuation of marital assets is within its sound discretion and will only be disturbed for an abuse of discretion. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016) (citing *In re Marriage*

*of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005)).  As long as the evidence is sufficient and reasonable inferences support the valuation, an abuse of discretion does not occur.  *Id*.  We will not weigh the evidence and will consider the evidence in the light most favorable to the judgment.  *Id*.  "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court."  *Nickels*, 834 N.E.2d at 1095 (quoting *Bizik v. Bizik*, 753 N.E.2d 762, 766 (Ind. Ct. App. 2001), *trans. denied*).

[13]   During the final hearing, Timothy and Angela both put forth evidence pertaining to the value of Carter Plumbing.  The trial court ultimately determined "the most credible value of Carter Plumbing to be $200,000.00," which value Timothy assigned to Carter Plumbing in the August 25, 2014 verified personal financial statement he submitted to his bank.[4]  *Appellant's Appendix* at 103.  This value corresponded with an August 25, 2014 balance sheet for Carter Plumbing that showed Carter Plumbing had an ownership equity of $197,315.

---

[4] Generally, the marital pot closes on the date the dissolution petition is filed.  *Smith v. Smith*, 854 N.E.2d 1, 6 (Ind. Ct. App. 2006).  However, a trial court has broad discretion in determining the date upon which to value the marital assets, and the trial court may select any date between the date of filing the petition of dissolution and the date of the final hearing.  *Id*.  Here, Timothy asked his expert to value Carter Plumbing as of April 14, 2014, the day Angela filed the petition for dissolution.  Timothy accepts that the trial court apparently chose to value Carter Plumbing as of August 25, 2014.  *See Appellant's Brief* at 15 (noting without argument that August 25, 2014 was "the date on which the trial court determined that the business should be valued").

[14] Here, Timothy does not dispute that he identified Carter Plumbing as an asset valued of $200,000 in the August 25, 2014 personal financial statement he submitted to his bank. Nevertheless, Timothy argues that the trial court could not rely on his valuation because there is no basis for that assigned value. *See Court View Centre, L.L.C. v. Witt*, 753 N.E.2d 75, 82 (Ind. Ct. App. 2001) (holding that a business owner is competent to offer an opinion as to the value of his business so long as there is a basis for that valuation). Timothy asserts that there is a lack of evidence regarding the methodology he used or what information he included in arriving at the value he assigned to Carter Plumbing at that time. Timothy claims that the value the court assigned to Carter Plumbing may have included his personal goodwill, which is not a marital asset subject to distribution. Timothy also claims that the balance sheet on which he relied may not have used figures that had been reduced to market value.

[15] We disagree with Timothy that there is no basis for the $200,000 valuation of Carter Plumbing he submitted to his bank. Timothy's $200,000 valuation directly correlated with the August 25, 2014 balance sheet that he attached to his personal financial statement. As described by the parties' experts, the balance sheets compared Carter Plumbing's assets and liabilities, with the ultimate calculation being the ownership equity for Carter Plumbing. As indicated by the August 25, 2014 balance sheet, Carter Plumbing had ownership equity of $197,315.22.

[16] We also disagree with Timothy that the $200,000 value assigned to Carter Plumbing included items that are not marital property subject to disposition.

The experts' testimony made it clear that ownership equity is the difference between the hard assets and hard liabilities and does not include the value of intangibles, such as personal or enterprise goodwill. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999) (citing *In re Marriage of Talty*, 652 N.E.2d 330, 333 (Ill. 1995)) (noting goodwill that is personal to one spouse is not a divisible marital asset, but enterprise goodwill is a marital asset subject to property division).

[17] To the extent Timothy asserts that the August 25, 2014 balance sheet could not be relied upon because it was not adjusted to market value, we find that such claim is not supported by the record. After being shown the August 25, 2014 balance sheet, Pritchett testified that "a lot of those entries in there are *probably* accounting related entries and have not been marked to market." *Transcript Day 1* at 57 (emphasis supplied). Pritchett's testimony does not establish that the values used in the August 25, 2014 balance sheet were incorrect or improper and Timothy presented no other evidence suggesting that the August 25, 2014 balance sheet was not accurate. We also find it curious that Timothy found the August 25, 2014 balance sheet sufficiently accurate to claim in a personal financial statement submitted to his bank that Carter Plumbing was an asset valued at $200,000, but that the same balance sheet is not accurate for purposes of valuing and dividing the marital estate.

[18] Finally, we note that Pritchett, in explaining his appraisal, made much of the fact that Timothy would not sign a covenant not to compete. Pritchett therefore did not include any value for goodwill attributable to Pritchett himself. Pritchett's appraisal was essentially a valuation of Carter Plumbing

based on the April 14, 2014 balance sheet. The $1000 value Pritchett assigned to Carter Plumbing was the value if the business name was sold.

[19] Here, the trial court based its valuation of Carter Plumbing on the ownership equity as reflected on the balance sheet as of August 25, 2014. The trial court did not have to accept Pritchett's uninformed opinion that such figures had not been adjusted to market value or assign a value to Carter Plumbing consistent with its fair market value if sold. *See Crider v. Crider*, 15 N.E.3d 1042, 1061 (Ind. Ct. App. 2014) (holding that a trial court is vested with discretion in choosing a methodology to use and is not required to use fair market value), *trans. denied*.

[20] As noted above, we will not second-guess the manner in which the trial court determined the value to assign to Carter Plumbing so long as there is evidence in the record or reasonable inferences that support the valuation. We find the trial court's findings with respect to its valuation of Carter Plumbing are supported by the evidence and conclude that the trial court did not abuse its discretion in relying upon Carter Plumbing's balance sheet in deciding to value Carter Plumbing at $200,000 for purposes of dividing the marital estate.

## 2. Hearsay

[21] Timothy also argues that the trial court relied on impermissible hearsay evidence in valuing Carter Plumbing. Specifically, Timothy asserts that, over his objection, the trial court erroneously admitted and then considered the STA report that included his statement in 2013 that he believed Carter Plumbing had a value of $400,000.

In its findings of fact, the trial court summarized the evidence as it pertained to the STA report. Contrary to Timothy's assertion, however, there is no indication in the trial court's conclusions that the court "likely used this valuation as it narrowed the eventual valuation down to $200,000." *Appellant's Brief* at 16. Indeed, in its conclusions of law, the trial court referenced only Timothy's post-filing assertion in his personal financial statement that Carter Plumbing was an asset valued at $200,000, which the court found to be "the most credible" value of Carter Plumbing. *Appellant's Appendix* at 103. Thus, even if the trial court erroneously admitted the STA report into evidence and then considered it, any error would have been harmless as the evidence likely did not contribute to the court's determination regarding the value of Carter Plumbing. *See Techna-Fit, Inc. v. Fluid Transfer Products, Inc.*, 45 N.E.3d 399, 411 (Ind. Ct. App. 2015) (noting that an error is harmless when the probable impact of the erroneously admitted evidence on the factfinder, in light of all the evidence presented, is sufficiently minor so as not to affect a party's substantial rights).

### 3. Cross-Appeal

Angela filed a cross-appeal in which she maintains that the trial court abused its discretion in not ordering Timothy to pay all of her claimed amount of attorney fees. Angela maintains that a majority of her attorney fees were incurred as a result of Timothy's failure to comply with discovery requests.

[24] We review a trial court's decision to award or deny attorney fees in connection with a dissolution decree using an abuse of discretion standard. *Troyer v. Troyer*, 987 N.E.2d 1130, 1142 (Ind. Ct. App. 2013), *trans. denied*. The trial court has broad discretion in assessing attorney fees, and we will reverse only if its decision is clearly against the logic and effect of the facts and circumstances before it or if it misapplies the law. *Fackler v. Powell*, 923 N.E.2d 973, 981 (Ind. Ct. App. 2010).

[25] Pursuant to Ind. Code § 31-15-10-1, a trial court may order a party in a marriage dissolution proceeding to pay a reasonable amount of the attorney fees of the other party. "When making such an award, the court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income and other factors that bear on the reasonableness of the award." *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1028 (Ind. Ct. App. 2003). "'When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper.'" *Hartley v. Hartley*, 862 N.E.2d 274, 287 (quoting *Ratliff v. Ratliff*, 804 N.E.2d 237, 249 (Ind. Ct. App. 2004)). Where the parties' resources are relatively on par with each other, the only basis for an award of attorney fees are the improper actions of one party necessitating the incurrence of attorney fees by the other party. *Hendricks*, 784 N.E.2d at 1028 (stating that the misconduct that directly results in additional litigation expenses may be properly taken into account in trial court's decision to award attorney fees).

Here, the trial court found that Timothy "habitually failed to comply" with Angela's "reasonable and necessary" discovery requests even after being encouraged by the court and then admonished. *Appellant's Appendix* at 97, 99. The trial court specifically noted Timothy's most egregious violations and further noted that even after being ordered to comply, Timothy only reluctantly did so. Upon considering Angela's request for attorney fees, the trial court determined that $3000 was a reasonable amount to order Timothy to pay given the difficulties created by his failure to comply with discovery requests.

Aside from Timothy's actions concerning discovery matters, Angela asserts no other basis upon which to support an award of all of her attorney fees. Indeed, the trial court found that the marital estate should be divided equally and ordered Timothy make an equalization payment to Angela, thereby putting them relatively on par with each other. Having reviewed the record, we cannot say that the trial court abused its discretion in deciding not to award Angela all of her attorney fees.[5]

We affirm.

Bailey, J. and Bradford, J., concur.

---

[5] In addition to arguing that she should have been awarded all of her attorney fees she incurred at the trial level, Angela seeks an award of appellate attorney fees. Angela, however, fails to cite any relevant authority or assert any basis upon which an award of appellate attorney fees may be warranted. She has therefore waived the issue for our consideration.