## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 05 2017, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy O. Carson
Massillamany & Jeter LLP
Fishers, Indiana

ATTORNEY FOR APPELLEE

Michael R. Auger
Franklin, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of:

Tina Marie Perry,

*Appellant-Respondent,*

v.

William N. Perry, III,

*Appellee-Petitioner.*

April 5, 2017

Court of Appeals Case No.
41A04-1606-DR-1461

Appeal from the
Johnson Superior Court

The Honorable
Cynthia S. Emkes, Judge

Trial Court Cause No.
41D02-1209-DR-697

**Kirsch, Judge.**

[1] The marriage of Tina Marie Perry ("Mother") and William N. Perry, III ("Father") was dissolved in 2013, and pursuant to a decree of dissolution, Mother was awarded spousal maintenance based on her incapacity. Mother raises one issue on appeal, which we restate as whether Father met his burden

of showing changed circumstances so substantial and continuing as to warrant the revocation of Father's obligation to pay incapacity maintenance.

[2] We reverse and remand with instructions.

## Facts and Procedural History

[3] Mother and Father, who were married on December 30, 1995, are the parents of A.P., born March 27, 1997, and M.P., born December 21, 2000 (together, "the children"). The parties' marriage was dissolved after seventeen years of marriage by a Decree of Dissolution of Marriage, dated October 3, 2013 ("the Decree").[1] The dissolution court found that it was in the children's best interests to be with Mother and awarded her the sole legal and physical custody of the children.[2] Father was awarded parenting time consistent with Indiana Parenting Time Guidelines.

[4] Sections IV, V, and VIII of the Decree are pertinent to this appeal. In Section IV, titled "Child Support," the dissolution court ordered Father to pay child

---

[1] The dissolution court entered its initial decree of dissolution on September 24, 2013; however, on October 3, 2013, that decree was amended by "Corrected Findings of Fact and Conclusions Thereon and Decree of Dissolution of Marriage." *Appellant's App.* at 26-60. A reference to "the Decree" is a reference to the October 3, 2013 order.

[2] Decisions of two trial courts are pertinent to this appeal. For clarity, we refer to the trial court that entered the Decree as the "dissolution court" and to the trial court that entered an agreed order in June 2015, and later revoked Mother's incapacity maintenance, as the "trial court."

support to Mother in the amount of $203 per week.[3] *Appellant's App*. at 33-34.[4]

That weekly amount was calculated from a child support obligation worksheet, which reflected that Father's weekly gross income was $1,384, or $71,968 per year,[5] and Mother's weekly gross income was $519, or $26,988 per year.[6] *Appellant's App*. at 33, 59. The dissolution court also ordered Father to pay Mother 20% of any irregular income, from refereeing and snow removal, that Father received in excess of his base income of $71,968. *Id*. at 35. Father estimated that in 2011 and 2012, he had irregular income in the amounts of $9,305 and $9,649, respectively.[7] At the time of the final dissolution hearing, Mother was not receiving any Social Security benefits paid on behalf of the children; however, the dissolution court determined that any such benefits paid to Mother in the future would be added to her weekly gross income for purposes of calculating future child support. *Id*. at 34.

---

[3] This amount was calculated using children's total weekly child support amount of $386, minus $78 (Father's credit for parenting time), minus $105 (Mother's support obligation). Because exact dollar amounts are not pertinent to our analysis, where a dollar amount includes cents, we have rounded the figure to the nearest dollar.

[4] There are two volumes of the Appellant's Appendix; however, Volume I contains only the table of contents for Volume II. For ease of reference, all citations to Appellant's Appendix are citations to Volume II.

[5] There is a small discrepancy in the gross annual income attributed to Father, with the two amounts being $71,990 and $71,968. Pursuant to Father's W-2, his gross annual income in 2012 was $71,990. *Appellant's App*. at 33. The dissolution court, apparently, divided that income by 52 weeks and arrived at the rounded-down *weekly* income of $1,384. *Id*. That weekly income was then used to calculate the *quarterly* income of $17,992, which resulted in an *annual* income of $71,968.

[6] This amount represented Mother's 2013 Social Security disability benefits in the weekly amount of $480 plus weekly income from rental property in the amount of $39.

[7] Based on this 80/20 formula, future irregular income in comparable amounts would result in income to Father of about $7,500 and income to Mother of about $1,800 per year.

[5] In Section V of the Decree, titled "Insurance Exemptions and Extracurricular Activity Expenses," the dissolution court ordered Father to maintain medical, dental, and vision insurance coverage for the children. *Appellant's App*. at 37. There was no evidence that Father incurred any additional expense for maintaining "the children's coverage in addition to his own." *Id*. at 33. Mother was ordered to pay the first $1,204 of annual uninsured health care for medical, dental, prescriptions, orthodontics, or other physical or emotional health-related expense incurred by or on behalf of the children. *Id*. at 37. The balance of uninsured expenses was to be paid 72.73% by Father and 27.27% by Mother. *Id*. at 59. The dissolution court also ordered the parties to split the costs of the children's extracurricular expenses, with Father paying 70% and Mother paying 30%. *Id*. at 37-38.

[6] Finally, in Section VIII of the Decree, titled "Maintenance," the dissolution court ordered Father to pay $400 per month to Mother, about $92 per week, of spousal maintenance based on her disability—a disability that both parties agreed had existed since October 1, 2010. *Id*. at 53. In granting Mother's request for incapacity maintenance, the dissolution court considered Mother's net monthly disability income of $1,765 from Social Security, her monthly obligations, as well as a summary of her major expenses. *Id*. at 53-54. The dissolution court explained:

> Even without considering her credit card obligations, utilities, and the cost of everyday living, [Mother]'s mortgage and car loans alone account for the lion's share of her disposable income. [Mother] has a reasonable request for $400.00 in monthly

maintenance, and [Father] has the regular and irregular income with which to satisfy the request. The Court finds and orders that [Father] shall pay incapacity maintenance to [Mother] in the amount of $400.00 per month . . . . The *obligation shall terminate upon the death of either party* and is modifiable according to law. . . . Said maintenance *shall terminate at the time [Mother] begins receiving distributions from [Father's] Defined Benefit Plan* . . . .

*Appellant's App*. at 54 (emphasis added). The oldest child, A.P., was sixteen years old at the time the Decree was entered; yet, there is no language in the Decree pertaining to educational support for children's post-secondary education.

[7] Shortly after the issuance of the Decree, the children's circumstances changed, and on November 5, 2013, Father filed a petition for modification of custody. The trial court held a hearing on December 17, 2013 and, on December 30, 2013, entered an order concluding that it was no longer in the children's best interests for Mother to have sole legal and physical custody. *Appellant's App*. at 61-66. Accordingly, the trial court granted Father sole legal and physical custody of the children, gave Mother "liberal parenting time," and modified Father's child support obligation to Mother, on a temporary basis, from $203 per week to $120 per month. *Id*. at 62.

[8] In June 2015, after numerous continuances, the parties reached an agreement, and the trial court issued an "Agreed Order on Modification of Custody and Contempt Citations" ("the Agreed Order"). *Id*. at 67-69. Pursuant to the Agreed Order, Father continued to have physical and legal custody of the

children, and Mother continued to have parenting time with the children in accordance with the Parenting Time Guidelines. The Agreed Order also set forth the following pertinent provisions:

4. The parties agree that Father's child support obligation as set out in the December 30, 2013 [order] shall terminate immediately. Further, the parties have attached hereto a Child Support Obligation Worksheet reflecting a child support obligation owed by Mother to Father.[8] However, *Father receives Social Security Disability benefits as a result of Mother's disability*.[9] *The parties agree that said amount shall satisfy Mother's obligation of support to Father.* The parties agree that at the time of this Agreement that no arrearage is owed by Father to Mother nor by Mother to Father.

5. The parties agree that the six percent rule shall apply and that *Father shall be obligated for the first One Thousand Two Hundred Eighty Dollars ($1,280.00) of annual uninsured medical expenses* for the minor children. Once Father pays said amount, any *remaining obligations shall be split with Father being responsible for 75%* and Mother being responsible for 25% of said costs.

6. The parties agree that *there remain two outstanding bills for the children's participation in soccer* in the approximate amount of *Eight Hundred Seventy Dollars ($870.00). Father shall be responsible for said obligations*. Additionally, Father shall pay 100% of the

---

[8] The referenced child support worksheet is not in the record before us.

[9] Mother, alone, cites to the amount of the Social Security payment as being $964 per month for both children. *Tr.* at 9; *Appellant's App.* at 7, 9. Because Father does not dispute this figure, we proceed with the understanding that Social Security paid Father $964 per month.

extracurricular costs associated with the minor children from the date of this Order forward.

. . . .

10. The parties agree that this Agreement resolves all issues existing between the parties that were set forth in the Verified Petition for Modification of Custody filed November 5, 2013 ….

*Appellant's App*. at 67-68 (emphasis added).

[9] On September 15, 2015, less than three months after the trial court entered the Agreed Order, Father filed a "Petition to Modify Spousal Maintenance" ("Petition to Modify"), alleging that, since the Decree, "there has a been a substantial and continuing change in circumstances warranting a modification" of the court's spousal maintenance order. *Appellant's App*. at 70. In the Petition to Modify, Father argued that the change of circumstances was related to his having sole custody of his children and the expenses associated with that. Father noted that he was responsible for paying 100% of the expenses for the children's extracurricular activities, school, cell phones, and clothing. *Id*. at 70-71. He also stated that he was responsible for paying 100% of the oldest child's monthly car payments, car insurance, gas, and post-secondary education at University of Indianapolis. *Id*. Father alleged that, "while at the time of the Court's issuance of the Decree Mother was not employed and had no income, Mother now receives Social Security Disability payments and is believed to have other income as well." *Id*. at 71. Father asked the trial court to "modify its prior issued order of spousal maintenance to terminate Father's obligation"

to pay spousal maintenance and prayed for "any and all other just and proper relief . . . ." *Id.* at 71.

[10] On April 5, 2016, the trial court held a hearing on Father's Petition to Modify. Three weeks later, the trial court issued its order revoking Father's obligation to pay incapacity maintenance to Mother ("Order for Modification"). Mother filed a motion to correct error, which the trial court denied on May 31, 2016. Mother now appeals.

## Discussion and Decision

[11] We generally review rulings on motions to correct error for an abuse of discretion. *French v. French*, 821 N.E.2d 891, 895 (Ind. Ct. App. 2005). Our standard of review for appeal of a motion to correct error directs us to consider the propriety of the trial court's decision on the underlying order, which here is the Order for Modification. *Id.* A trial court has broad discretion in ruling on a petition to modify spousal maintenance, and we will reverse that decision only for an abuse of discretion. *In re Marriage of Gertiser*, 45 N.E.3d 363, 368 (Ind. 2015). "That is, we review whether the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom; whether the court misinterpreted the law or disregarded evidence of factors listed in a controlling statute; or whether it applied the wrong legal standard to properly found facts." *Id.* at 368-69 (citations omitted).

[12]   In its Order for Modification, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Where, as here, the trial court enters findings and conclusions sua sponte, the findings control only with respect to the issues they cover, while a general judgment standard applies to issues on which there are no findings. *In re Marriage of Sutton,* 16 N.E.3d 481, 484-85 (Ind. Ct. App. 2014). "We affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence." *Ahls v. Ahls*, 52 N.E.3d 797, 800 (Ind. Ct. App. 2016) (citing *Hurt v. Hurt,* 920 N.E.2d 688, 691 (Ind. Ct. App. 2010)). A finding of fact is clearly erroneous when the record contains no facts to support the finding, either directly or by inference. *Id.* (citing *Hurt,* 920 N.E.2d at 800). "'A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.'" *Id.* (quoting *Hurt,* 920 N.E.2d at 691). In conducting our review, we first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Id.*

[13]   A trial court may award spousal maintenance under "three narrow circumstances—incapacity, caregiver, or rehabilitative." *Alexander v. Alexander*, 980 N.E.2d 878, 880 (Ind. Ct. App. 2012). At issue here is incapacity maintenance, which requires both a physical or mental incapacity and a resulting financial necessity. *In re Gertiser*, 45 N.E.3d 363, 367 (Ind. 2015). Indiana Code section 31-15-7-2(1) provides:

> If the court finds a spouse to be physically or mentally
> incapacitated to the extent that the ability of the incapacitated

spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Mother was awarded spousal maintenance of $400 per month based on her physical or mental incapacity—the existence of which Father does not dispute—that resulted in financial need.

[14] After the initial award,

> [p]rovisions of an order with respect to maintenance ordered under . . . this chapter (or IC 31-1-11.5-9(c) before its repeal) may be modified or revoked. Except as provided in IC 31-16-8-2, modification may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable[.]

Ind. Code § 31-15-7-3(1). Commenting on Indiana Code section 31-15-7-3, our Supreme Court recently stated:

> In *Haville v. Haville*, we accepted that statutory language at face value—observing in a footnote that the statute "expressly declares that provisions of an order for maintenance authorized by statute 'may be modified or revoked' upon specified grounds, one of which is 'a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.'" 825 N.E.2d 375, 378 n.2 (Ind. 2005). Nothing in that statutory language limits the "circumstances" to the incapacity itself. To the contrary, it permits revocation under precisely the same terms as modification—when the award has become unreasonable under the circumstances.

*In re Gertiser*, 45 N.E.3d at 367-68. For purposes of Indiana Code section 31-15-7-3, "revoking an award is a form of modifying it, so the two terms are not necessarily exclusive." *Id*. at 367 n.5.

[15] In the Decree, the dissolution court had "assign[ed] great weight to [Father's] superior earnings and earning ability," noting that Mother's income was "locked in at about $25,000.00 annually," while Father had earned almost $72,000 in 2012 and $81,000 in 2011, income that did not include "substantial earnings from refereeing and snow plowing." *Appellant's App*. at 52-53. The dissolution court also assigned "considerable weight to the financial circumstances of the parties at the time the divorce is to be completed." *Id.* at 53. The court noted that Father rented a home owned by his parents and "use[d] his parents' credit card to meet his expenses." *Id.*

[16] In granting Mother the initial award of incapacity maintenance, the dissolution court considered the following factors: (1) Mother was disabled and had been disabled since October 1, 2010; (2) Mother has "significant limitations" that prevent her from working, and "she is unable to work"; (3) Mother's "net monthly income" from Social Security is $1,765, or $407 per week;[10] (4)"[e]ven

---

[10] Mother's income listed in the Decree's section pertaining to maintenance, conflicts with the income listed in the section pertaining to child support. In the child support section, the dissolution court stated that Mother received disability benefits from Liberty Mutual Insurance Company in the "gross amount" of $2,080, and that on April 23, 2013, she was awarded disability benefits from the Social Security Administration in the "gross monthly amount" of $1,871. *Appellant's App*. at 33. However, Mother explained that her private insurance disability benefits were reduced by the amount she received from Social Security; therefore, her maximum disability benefit for purposes of child support was $2,080 per month or $480 per week. *Appellant's App*. at 33.

without considering Mother's credit card obligations, utilities, and the cost of everyday living, [Mother]'s mortgage and car loans alone account for the lion's share of her disposable income"; and (5) Father has the regular income and irregular income with which to satisfy an incapacity maintenance payment of $400 per month. *Appellant's App*. at 53-54.

[17] In his Petition to Modify, Father ignored most of the above considerations and, instead, focused on the fact that he gained full custody of the children and is responsible for 100% of their expenses, including extracurricular activities, school expenses, cell phones, and clothing, as well as 100% of A.P.'s expenses for her post-secondary education at University of Indianapolis, car payments, car insurance, and gasoline. *Id.* at 70-71. In his only statement pertaining to Mother's finances, Father maintained that Mother was unemployed and had no income in 2013, but now has "Social Security Disability payments and is believed to have other income as well." *Id*. at 71.

[18] At the hearing on his Petition to Modify, Father introduced two kinds of evidence to prove a substantial change—evidence of the increase in the cost of caring for the children and evidence that his income had changed. Father argued that, in 2015, he had spent on behalf of the children approximately $12,000 in "bigger ticket items" such as "health insurance, medical costs, cell phones, automobile expenses, book rental fees, and the like," and in only the first quarter of 2016, he had paid about $7,000. *Tr*. at 3-4. The 2015 expenses could be summarized as (1) $424 in interest on A.P.'s loans for post-secondary education, (2) $2,171 in health-related expenses, (3) $2,183 in sports-related

expenses, (4) $4,783 in car-related expenses, (5) $1,500 in cell phone-related expenses, and (6) $1,121 in expenses for M.P.'s education. *Appellant's App*. at 20-21. The 2016 expenses included approximate amounts of $375 for cell phones, $302 for sports, and $2,248 for car-related expenses. Father also itemized A.P.'s outstanding college loan amount as $4,200. *Id*. at 21.

[19] Regarding his income, Father introduced the first page of his last three tax returns, for years 2013, 2014, and 2015, to prove that his income had actually decreased since the time of the dissolution. *Tr*. at 5. Father cited to his adjusted gross income as follows: $87,850 in 2013, $78,000 in 2014, and $85,000 in 2015. *Id*. Father claimed that his income went down in 2014 because he had custody of the children and had to give up his irregular income. *Id*. Father also claimed that $4,000 of his 2015 income was a one-time signing bonus, resulting in 2015 income of $81,000. From this evidence Father claimed that, considering "the extravagant increase in burden that he ha[d] taken upon himself that that four hundred dollars [in spousal maintenance] should be reduced to zero." *Id*. at 6. Father introduced no evidence regarding Mother's finances.

[20] In its Order for Modification, the trial court found that Mother's disability remained. *Appellant's App*. at 13. In evaluating whether incapacity maintenance should be modified, the trial court focused on the change of the children's custody from Mother to Father, and the fact that "Father ha[d] been paying 100% of the daily expenses for the children." *Id*. at 14. Also significant to the trial court was the fact that the child-related expenses "are substantial

considering the ages of the children." *Id*. The trial court also placed emphasis on Father's financial obligations, including: college and school expenses; the expenses for travel soccer, the expenses for A.P.'s car, insurance, and gas; extracurricular activity expenses; medical expenses; and the increased costs of the children's daily living expenses. *Id*. Regarding Mother, the trial court found, "Mother has been ordered to contribute to the payment of expenses for the children, and she has not done so." *Id*. From these factors, the trial court revoked Father's obligation to pay the incapacity maintenance, stating, "[T]here has been such a substantial change in the amount of expenses Father [was] obligated to pay that are reasonable and necessary in regard to his support of the minor children, that he is no longer able financially to pay $400.00 per month to Mother for spousal maintenance."[11] *Id*. at 14-15.

[21] A spousal maintenance award may be modified or revoked if the trial court determines that there have been "changed circumstances so substantial and continuing as to make the terms unreasonable." Indiana Code § 31-15-7-3(1). "[W]hen determining whether there has been a substantial change in circumstances justifying modification of a spousal maintenance award, a trial court should consider the factors underlying the original award; those factors include the financial resources of the party seeking to continue maintenance,

---

[11] The trial court revoked Mother's incapacity maintenance. However, recognizing that Mother had been "relying on the monthly spousal maintenance payments in budgeting for the year," delayed the effective date of its order, thus requiring Father to continue to make maintenance payments until October 1, 2016. *Appellant's App*. at 16.

the standard of living established in the marriage, and the ability of the spouse paying maintenance to meet his or her own needs. *Banks v. Banks*, 980 N.E.2d 423, 427 (Ind. Ct. App. 2012) (citing *Mitchell v. Mitchell*, 875 N.E.2d 320, 323 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*. "For a modification, it is enough to show changes are 'substantial and continuing' enough to make the existing award unreasonably excessive or inadequate, and the opportunity remains open for future modifications. *See In re Gertiser*, 45 N.E.3d at 368. However, "because revoking an award means extinguishing it forever, it necessarily entails proving that the change is so 'substantial and continuing' that the very *existence* of the award has become unreasonable—not only in the present, but under any reasonably foreseeable future circumstances as well." *Id*.

[22] The trial court revoked Mother's maintenance award. Accordingly, Mother argues on appeal that the trial court erred when it terminated her spousal maintenance upon a finding that the change in circumstances is "so 'substantial and continuing' that the very *existence* of the award has become unreasonable not only in the present, but under any reasonable foreseeable circumstances as well." *Appellant's Br*. at 13 (quoting *In re Gertiser*, 45 N.E.3d at 368). We agree with Mother.

[23] Regarding the trial court's finding of "a substantial change in circumstances," Mother contends that the evidence did not support the modification of her maintenance award. Specifically, Mother offers that, instead, the evidence supported a finding that the parties' incomes remained relatively the same. *Id*. at 11. In his Petition to Modify, Father argued that Mother's financial

condition had improved because in 2013, when the Decree was entered, Mother was not employed and had no income, but now Mother receives Social Security Disability payments. *Appellant's App*. at 71. Mother notes that, contrary to Father's implication, she was paid Social Security benefits, in the amount of $1,765 per month, prior to entry of the October 2013 Decree. *Id*. at 22. In fact, Mother's Social Security benefits represented a substantial part of Mother's income, which was used to calculate child support payments. *Id*. at 59. Father also did not introduce any evidence that Mother had earned "other income" since the Decree was entered. *Id*. at 71. Mother argues that her income decreased subsequent to the Decree because Social Security began deducting about $61 from her monthly benefit to cover her "Medicare prescription drug plan costs." *Appellant's Br*. at 9; *Appellant's App*. at 23. The evidence before the trial court supported Mother's contention that her income had slightly decreased.

[24] Addressing the issue of whether there was a change in his income, Father introduced the front page of each of his tax returns for the years 2013, 2014, and 2015, arguing that "his income had actually dropped slightly during that time frame." *Appellee's Br*. at 13. The tax forms revealed that Father's annual gross income in those years, prior to deductions related to spousal maintenance, was $89,456 in 2013, $83,796 in 2014, and $90,233 in 2015. *Appellant's App*. at 17-19. After subtracting $4,000 from his 2015 income, claiming it was a one-time signing bonus, Father reported that his 2015 income was $86,233, an income Father claimed was $3,223 less than his 2013 income. *Id*. Contrary to Father's

suggestion that 2013 is the key year, we note that any change in Father's income must be compared to Father's 2012 income. It is true that the Decree was entered in 2013; however, Mother's maintenance award was calculated based on Father's 2012 W-2, which reflected an annual gross income of $71,990, an amount Father claimed was his "typical" income. *Id.* at 33. Even adding $7,718 to that income, the 80% of irregular income that Father was entitled to under the Decree, Father's gross income in 2012 would have been around $79,708. Accordingly, Father's income tax forms reveal that Father has made more each year than he did when the dissolution court awarded Mother incapacity maintenance.[12] The evidence did not support a finding that there was a substantial change in Father's income to warrant a modification, let alone a termination.

[25] Mother also contends that the evidence did not support the trial court's determination that a substantial change in the amount of "expenses Father is obligated to pay on behalf of the children" has resulted in Father being financially unable to pay $400 per month for incapacity maintenance. Mother claims that an increase in the children's expenses is irrelevant to the issue of maintenance because (1) Father's expenses have been offset by other sources of money, and (2) the children's expenses relevant in the instant case do not impact the maintenance order. As to the first factor, Mother argues that

---

[12] Based on these numbers, Father's 2012 income increased by $9,748 in 2013, by $4,088 in 2014, and by $10,525 in 2015.

additional expenses for the children, if any, were offset by changes that occurred subsequent to the award of maintenance. Mother contends that, in addition to the increase in Father's income, Father is no longer obligated, as he was when maintenance was ordered, to pay child support in the amount of $203 per week. *Appellant's Br*. at 16. As such, Father retains a yearly amount of approximately $10,556 per year. *Id*. Mother also contends that, in addition to not having to pay $10,556, Father received, at the time of the maintenance modification hearing, $964 per month, or $11,568 per year, in Social Security payments for the benefit of the children. While the trial court made no findings that Father's relative finances had improved, the evidence presented to the trial court supported a finding that Father was in a financially better position than he had been at the time the maintenance award was entered.

[26] Mother contends that Father's claim of changed conditions on the basis of increased spending for the children is also not supported by the evidence. As part of the modification of custody from Mother to Father, the parties agreed to terms of child support, and those terms were reflected in the Agreed Order. The Agreed Order, in part, provided that the $964 monthly Social Security payments, or $11,568 per year, paid on behalf of the children, "shall satisfy Mother's obligation of support to Father." *Appellant's App*. at 68. The Agreed Order also set forth that Father was responsible for: (1) the outstanding soccer bills for M.P., in the amount of $870, plus "100% of the extracurricular costs *from the date of the order forward*; and (2) the first $1,280 of uninsured medical expenses, and thereafter, 75% of the remaining obligations. The Agreed Order

did not specifically obligate either parent to pay the children's expenses related to post-secondary education, a car, or cell phones, even though the children were already incurring such expenses.

[27] During the hearing on the Petition to Modify, Father introduced a list of the children's expenses for 2015, totaling more than $12,500. Assuming without deciding that the parents were responsible for paying each of those expenses, Father's numbers exaggerate the amount he was paying. At the time of the dissolution hearing, and before Social Security made payments on behalf of the children, Father made about 72.7% of the family's income and Mother made about 27.3%. The parties' contributions to child support were calculated using those percentages. Under that formula, and setting aside any changes made subsequent to the Decree, Father could have already been responsible for 72.7% of the $12,500. The annual $11,568 Social Security payment that Mother gave Father to satisfy her child support obligation would have more than satisfied Mother's share.

[28] Finally, Mother argues that Father's payment of the children's expenses, regardless of the amount, is not relevant to the question of whether incapacity maintenance should be modified. *Appellant's Br*. at 8. We agree. Here, the dissolution court did not link custody or the calculation of child support to the award of incapacity maintenance. In fact, the Decree separated the issues into two sections; addressing the issue of child support in section IV and addressing the issue of maintenance in section VIII. As Mother notes, the Decree did not tie the modification or revocation of incapacity maintenance to any stage of the

children's lives, such as starting college or becoming emancipated. *Id*. at 9. Instead, the dissolution court stated:

> The [maintenance] obligation shall terminate upon the death of either party and is modifiable according to law. The Wife shall notify the Husband if she is found not to be disabled by the Social Security Administration upon future review . . . . Said maintenance shall terminate at the time [Wife] begins receiving distributions from [Husband's] Defined Benefit Plan discussed previously.

*Appellant's App*. at 54. The "defined benefit plan [was] valued on the premise of a normal retirement option," i.e., when Father turned 65 years old. *Id.* at 51. At the time that the incapacity maintenance was awarded, Father was approximately 43 years old, and Mother was approximately 48 years old. *Id.* Accordingly, this language reflected the dissolution court's determination that the incapacity maintenance would be paid to Mother for an extended period of time, regardless of child support payments, and as long as Mother remained incapacitated and in financial need.

[29] Here, the trial court made no detailed calculations about either party's finances. Instead, it found in general terms that there had been a "substantial change in circumstances," since the award of spousal maintenance, which made the maintenance "no longer reasonable," and warranted its termination. *Id*. at 13. We agree with Mother that the evidence presented to the trial court did not meet the "daunting" standard requiring "that the very existence of the award has become unreasonable—not only in the present, but under any reasonably

foreseeable future circumstances as well." *Id.* at 11, 12 (citing *In re Gertiser*, 45 N.E.3d at 368). Accordingly, we reverse the trial court's Order for Modification, and we remand with instructions that the incapacity maintenance order remains in place.

[30] Reversed and remanded with instructions.

Robb, J., and Barnes, J., concur.